WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————x

In re:                                                            :

LEHMAN BROTHERS HOLDINGS INC., *et al.*       :

                Debtors.       :

—————————————————————————x

LEHMAN BROTHERS SPECIAL FINANCING INC.       :

              Plaintiff,       :

-against-                                                      :

U.S. BANK NATIONAL ASSOCIATION, BANK OF
AMERICA NATIONAL ASSOCIATION, DEUTSCHE
BANK TRUST COMPANY AMERICAS, THE BANK OF
NEW YORK MELLON TRUST COMPANY NATIONAL
ASSOCIATION, WELLS FARGO BANK NATIONAL
ASSOCIATION, and DEFENDANTS IDENTIFIED ON
SCHEDULE 1,

                                        :

              Trustee Defendants,

-and-

AIRLIE CDO I, CORP., AIRLIE CDO I, LTD., AIRLIE
LCDO I (AVIV LCDO 2006-3), CORP, AIRLIE LCDO I
(AVIV LCDO 2006-3), LTD., AIRLIE LCDO II (PEBBLE
CREEK 2007-1), CORP., AIRLIE LCDO II (PEBBLE
CREEK 2007-1), LTD., AVIV LCDO 2006-1, CORP.,
AVIV LCDO 2006-1, LTD., AVIV LCDO 2006-2, CORP.,
AVIV LCDO 2006-2, LTD., BALBOA CDO I, CORP.,
BALBOA CDO I, LTD., BELLE HAVEN ABS CDO

Chapter 11

Case No. 08-13555 (JMP)

Adversary Proceeding
No.: _____ (JMP)

2005-1, LLC, BELLE HAVEN ABS CDO 2005-1, LTD.,
BELLE HAVEN ABS CDO 2006-1, LLC, BELLE
HAVEN ABS CDO 2006-1, LTD., EXUM RIDGE CBO
2006-1, CORP., EXUM RIDGE CBO 2006-1, LTD.,
EXUM RIDGE CBO 2006-2, CORP., EXUM RIDGE
CBO 2006-2, LTD., EXUM RIDGE CBO 2006-4, CORP.,
EXUM RIDGE CBO 2006-4, LTD., EXUM RIDGE CBO
2006-5, CORP., EXUM RIDGE CBO 2006-5, LTD.,
EXUM RIDGE CBO 2007-1, CORP., EXUM RIDGE
CBO 2007-1, LTD., EXUM RIDGE CBO 2007-2, CORP.,
EXUM RIDGE CBO 2007-2, LTD., GEMSTONE CDO VI
CORP., GEMSTONE CDO VI LTD., GREYSTONE CDO
SERIES 2008-4 LLC, GREYSTONE CDO SPC, FOR
THE ACCOUNT OF THE SERIES 2008-4
SEGREGATED PORTFOLIO, PEBBLE CREEK LCDO
2006-1, CORP., PEBBLE CREEK LCDO 2006-1, LTD.,
PEBBLE CREEK LCDO 2007-3, LLC, PEBBLE CREEK
LCDO 2007-3, LTD., RACE POINT IV CLO, LTD.,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2002-26 TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-
1-I TRUST, RESTRUCTURED ASSET CERTIFICATES
WITH ENHANCED RETURNS, SERIES 2006-18-C
ABX-A06-1-II TRUST, RESTRUCTURED ASSET
CERTIFICATES WITH ENHANCED RETURNS,
SERIES 2006-18-C ABX-A06-1-III TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-
2-I TRUST, RESTRUCTURED ASSET CERTIFICATES
WITH ENHANCED RETURNS, SERIES 2006-18-C
ABX-A06-2-II TRUST, RESTRUCTURED ASSET
CERTIFICATES WITH ENHANCED RETURNS,
SERIES 2006-18-C ABX-A06-2-III TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-20AT TRUST,
SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3),
LTD., STOWE CDO LLC, STOWE CDO SPC, FOR THE
ACCOUNT OF THE SERIES 2008-1 SEGREGATED
PORTFOLIO, TRADEWINDS II CDO SERIES 2006-1
LLC, TRADEWINDS II CDO SPC, FOR THE
ACCOUNT OF THE SERIES 2006-1 SEGREGATED
PORTFOLIO, WHITE MARLIN CDO 2007-1, CORP.,
WHITE MARLIN CDO 2007-1, LTD.,

Issuer Defendants.

_____x

2

## COMPLAINT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF" or "Plaintiff"), a debtor and

debtor in possession in the above-captioned jointly administered case of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors," and

together with its non-debtor affiliates, "Lehman"), by and through undersigned counsel, brings

this Complaint against certain trustees, U.S. Bank National Association, Bank of America

National Association, Deutsche Bank Trust Company Americas, The Bank of New York Mellon

Trust Company National Association, Wells Fargo Bank National Association, (referred to

collectively as the "Trustees"[1]), and certain special-purpose entities identified on Schedule 1

(referred to collectively as the "Issuers," and together with the Trustees, the "Defendants"),

which is attached and fully incorporated herein, and respectfully states:

## NATURE OF THE ACTION

1.      Plaintiff files this adversary proceeding to protect and restore a property

interest of Plaintiff that has substantial economic value to its estate – Plaintiff's contractual right

to senior payment priority ("Senior Payment Priority") in a derivatives transaction.  This action

stems from provisions in governing transaction documents with respect to certain derivatives

transactions (the "Modification Provisions"), the application of which were conditioned on the

commencement of either LBHI's or Plaintiff's bankruptcy case, that would operate so as to

deprive Plaintiff of this property interest by (a) taking Senior Payment Priority from Plaintiff, (b)

replacing it with junior payment priority ("Junior Payment Priority"), and (c) transferring Senior

---

[1]      The claims asserted by Plaintiff against the Trustees include each and every transaction as itemized on
Schedule 1, which is attached and incorporated herein, according to Issuer defendant for which the respective
Trustee served, operated, acted, or was otherwise designated as trustee, except transactions that have been resolved
by a fully executed settlement agreement.  Nothing in this complaint is intended, nor should be construed, to
contradict the terms of a fully executed settlement agreement previously entered into with any Defendant.

Payment Priority to or for the benefit of certain noteholders (the "Noteholders") who otherwise would have only Junior Payment Priority, including in certain circumstances by reducing or eliminating Plaintiff's right to payment altogether. This purported "flip" of payment priorities pursuant to the Modification Provisions, as described above, is referred to in this Complaint as the "Payment Priority Exchange."

2.        The Issuers issued a series of notes (the "Notes") pursuant to certain transaction documents, including trust or indenture documentation, specific to each series of notes (collectively, the "Transaction Documents") under which the Trustees serve. The Issuers and Plaintiff were parties to one or more swap agreements (collectively with respect to a given series of Notes, the "Agreements"). LBHI served as the Credit Support Provider, or guarantor, of Plaintiff's obligations under the Agreements. The Transaction Documents govern payment to the Noteholders and Plaintiff.

3.        The Trustees, or agents for one of the Defendants, hold for the benefit of (among others) Plaintiff and the Noteholders the collateral (the "Collateral"), or security over the Collateral that the Issuers provided to secure their respective payment obligations both to Plaintiff and to the Noteholders. Plaintiff's and the Noteholders' recourse for payment of claims against the Issuers is limited to the Collateral and/or any assets of the Issuers related to that particular series of Notes. Plaintiff's and the Noteholders' respective payment priorities for their claims against the Issuers are enforced and realized through the distribution of the Collateral or its proceeds.

4.        On September 15 and October 3, 2008, respectively, LBHI and Plaintiff filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Under the Agreements, the commencement of a case under the

Bankruptcy Code by either Plaintiff or its Credit Support Provider, LBHI, constituted an Event of Default under the Agreements with respect to Plaintiff.

5.       Under the Transaction Documents, when Plaintiff has a claim against a particular Issuer under their respective Agreement because it is "in-the-money" to Plaintiff, Plaintiff's claim has Senior Payment Priority, and the Noteholders' claim has Junior Payment Priority.  But upon (a) the occurrence of an Event of Default under the Agreements with respect to Plaintiff, and (b) triggering of the Modification Provisions, Senior Payment Priority is transferred from Plaintiff to or for the benefit of the Noteholders, leaving Plaintiff with only Junior Payment Priority, or no payment, for its claim.

6.       The Modification Provisions effect the Payment Priority Exchange *solely* as the result of Plaintiff's or LBHI's bankruptcy filing.  The Court should declare that the Modification Provisions constitute unenforceable *ipso facto* clauses that inappropriately modify a debtor's interest in property in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.  Accordingly, Plaintiff seeks a declaratory judgment that such provisions are unenforceable and that Plaintiff is entitled to Senior Payment Priority.

7.       Moreover, effecting the Payment Priority Exchange pursuant to the Modification Provisions violates the automatic stay under section 362(a)(3) of the Bankruptcy Code because it involves an improper exercise of control over property of Plaintiff's estate.  As such, Plaintiff seeks a declaratory judgment that such provisions violate the automatic stay.

8.       For purposes of alternative pleading, if the Modification Provisions are ultimately found to be enforceable in whole or in part,[2] to the extent that the Modification

---

[2]       This Court previously has concluded that similar contractual provisions do not become effective automatically upon an Event of Default, but in addition require the occurrence of further conditions precedent to determine distribution priorities after an effective early termination.  Plaintiff believes this interpretation of the Transaction Documents is correct.  As this Court recognized, however, even if the Modification Provisions were to

Provisions effected the Payment Priority Exchange *before* the commencement of Plaintiff's bankruptcy case, the Payment Priority Exchange constituted either (a) a preferential transfer of an interest of Plaintiff in property that may be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551 of the Bankruptcy Code, or (b) a constructive fraudulent transfer of an interest of Plaintiff in property that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551 of the Bankruptcy Code.

9.      If the Modification Provisions are ultimately found to be enforceable in whole or in part, to the extent that the Modification Provisions effected the Payment Priority Exchange *after* the commencement of Plaintiff's bankruptcy case, the Payment Priority Exchange constituted an unauthorized postpetition transfer of property of Plaintiff's estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of Plaintiff's estate under section 551 of the Bankruptcy Code.

## **PARTIES**

10.      Plaintiff is a Delaware corporation with its current principal business address at 1271 Sixth Avenue, 40th Floor, New York, New York 10020.

---

become effective automatically upon an Event of Default, certain protections of the Bankruptcy Code attached to Plaintiff on the date of LBHI's bankruptcy filing.  By contrast, the English High Court of Justice, Chancery Division, Royal Courts of Justice for England and Wales (the "High Court") and English Court of Appeal (Civil Division) (the "Court of Appeal"), considering issues of English common law as opposed to United States bankruptcy law, have held that provisions similar, if not identical, to the Modification Provisions became effective automatically upon LBHI's bankruptcy filing on September 15, 2008.  Pursuant to these holdings of the High Court and the Court of Appeal, the Payment Priority Exchange would occur upon the commencement of LBHI's bankruptcy case on September 15, 2008.  This alternative legal interpretation, which Debtors believe should not apply in this Court, is, nevertheless, an alternative basis for this pleading in the event the Payment Priority Exchange is ultimately determined not to have occurred upon or after the commencement of Plaintiff's bankruptcy case on October 3, 2008.

11.     Upon information and belief, U.S. Bank National Association is a national banking association organized under the laws of the United States with its principal place of business at One Federal Street, 3rd Floor, Boston, Massachusetts 02110.

12.     Upon information and belief, Bank of America National Association is a national banking association organized under the laws of the United States with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202.

13.     Upon information and belief, Deutsche Bank Trust Company Americas is a national banking association organized under the laws of the United States with its principal place of business at 60 Wall Street, MS NYC60-2606, New York, New York 10005.

14.     Upon information and belief, The Bank of New York Mellon Trust Company National Association is a national banking association organized under the laws of the United States with its principal place of business at 601 Travis Street, 16th Floor, Houston, Texas 77002.

15.     Upon information and belief, Wells Fargo Bank National Association is a national banking association organized under the laws of the United States with its principal place of business at 9062 Old Annapolis Road, Columbia, Maryland 21045.

16.     Upon information and belief, the Issuers are named and identified on the attached Schedule 1, which is incorporated fully herein.

## JURISDICTION AND VENUE

17.     The Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. §§ 157, 1334.  This is a "core proceeding" under 28 U.S.C. § 157(b).

18.     Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

19.     The statutory prerequisites for the relief requested herein are sections 105(a), 362(a)(3), 365(e)(1), 541(c)(1), 547, 548(a)(1)(B), 549(a), 550, and 551 of the

Bankruptcy Code, section 2201 of Title 28 of the United States Code, Federal Rule of Civil

Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

## BACKGROUND

20.     Lehman was formerly the fourth largest investment bank in the United

States.  For more than 150 years, Lehman was a leader in the global financial markets by serving

the financial needs of corporations, governmental units, institutional clients, and individuals

worldwide.  Lehman's headquarters in New York and regional headquarters in London and

Tokyo were complemented by a network of offices in North America, Europe, the Middle East,

Latin America, and the Asia Pacific region.

21.     Plaintiff's and LBHI's chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule

1015(b).

22.     Plaintiff and LBHI are authorized to operate their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

23.     The Issuers issued the Notes to raise funds with which to acquire assets.

Plaintiff and the Issuers are counterparties under the Agreements.  The Trustees serve pursuant to

the Transaction Documents.

24.     Under the Agreements, the bankruptcy filing of Plaintiff or LBHI as its

Credit Support Provider falls within the definition of an "Event of Default" with respect to

Plaintiff.  Until the Modification Provisions are triggered, Plaintiff has Senior Payment Priority

for its claims against the Issuers under the Agreements, and the Noteholders have Junior

Payment Priority for their claims against the Issuers under the Notes.  But upon triggering the

Modification Provisions, the application of which is conditioned on either Plaintiff's or LBHI's bankruptcy filing, the payment priority is altered. When this occurs, the Transaction Documents provide that (a) Plaintiff's Senior Payment Priority is taken from it and transferred to or for the benefit of the Noteholders, and (b) Plaintiff is allotted Junior Payment Priority, which until that moment had been held by the Noteholders.

25.    If this purported shift in priorities is not invalidated under the *ipso facto* doctrine, as Plaintiff believes it should be, then the Modification Provisions work as an intercreditor agreement between Plaintiff and the Noteholders in connection with their respective claims against the Issuers. If enforceable, the Modification Provisions would obligate Plaintiff, in contractually specified circumstances, to transfer its interest in particular property – the right to Senior Payment Priority – to or for the benefit of the Noteholders, thereby enhancing the Noteholders' ability to recover on their claims against the Issuers. The Payment Priority Exchange would thus cause Plaintiff to part with a valuable property interest – its contractual right to Senior Payment Priority – by giving it to or for the benefit of the Noteholders. Plaintiff's parting with that interest would constitute an avoidable "transfer" under section 101(54) of the Bankruptcy Code.

26.    If enforceable, the Modification Provisions operate as a covenant by Plaintiff that, upon the occurrence of specified events, Plaintiff will pledge some of its property to, or for the benefit of, the Noteholders, to further secure the Noteholders' claims against the Issuer. Just as such a covenant would give the Noteholders a contractual right to obtain property from Plaintiff through such a pledge, the Modification Provisions, if enforceable, would give the Noteholders a contractual right to obtain property from Plaintiff through the Payment Priority Exchange. And just as Plaintiff would satisfy its contractual obligation to the Noteholders under such a covenant by delivering property to, or for the benefit of, the Noteholders, through such a

pledge if the Modification Provisions are found to be enforceable, Plaintiff would, through the Payment Priority Exchange, satisfy its contractual obligation to the Noteholders to give Senior Payment Priority to, or for the benefit of, the Noteholders.  Even if the Modification Provisions might be read to effectuate the Payment Priority Exchange automatically, rather than through some action by Defendants, this does not change the fact that the Payment Priority Exchange constitutes a transfer of an interest of Plaintiff in property to or for the benefit of the Noteholders that satisfies an existing contractual obligation of Plaintiff to the Noteholders to make such transfer.

27.    Alternatively, if the Payment Priority Exchange is not effected pursuant to, and in satisfaction of, an existing contractual obligation of Plaintiff, then any operation of the Payment Priority Exchange would be a gratuitous transfer of a property interest by Plaintiff for which Plaintiff received no value in exchange.

28.    If the Modification Provisions are enforceable, then the Trustees would be required to effectuate the Payment Priority Exchange in violation of the Bankruptcy Code.

29.    All conditions precedent to suit have been performed, have occurred, or have been waived.

## COUNT I
### Against All Defendants

*(Declaratory Judgment -- Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Are Unenforceable Ipso Facto Clauses )*

30.      Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

31.      The Modification Provisions that purport to effect the Payment Priority Exchange as a result of LBHI's or Plaintiff's bankruptcy filing constitute unenforceable *ipso facto* clauses that violate sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.

32.      The Bankruptcy Code protects debtors from being penalized for filing a chapter 11 case, notwithstanding any contractual provisions or applicable law that would have that effect.  Section 365(e)(1) of the Bankruptcy Code provides that:

> [n]otwithstanding a provision in an executory contract . . .  an executory contract . . . of the debtor may not be terminated **or modified**, and any right or obligation under such contract or lease may not be terminated **or modified**, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the commencement of a case under this title . . . .

11 U.S.C. § 365(e)(1) (emphasis added).

33.      Similarly, section 541(c)(1) recognizes that a debtor's interest in property:

> becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that is conditioned on . . . the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1).

34.      Because the Modification Provisions (a) become operative after the commencement of LBHI's or Plaintiff's bankruptcy case, (b) effect the Payment Priority Exchange solely because of "the commencement of a case" under the Bankruptcy Code, and (c) deprive Plaintiff of Senior Payment Priority, the provisions are unenforceable *ipso facto* clauses.  *See* 11 U.S.C. §§ 365(e)(1), 541(c)(1).

35.     The Court should declare that the Modification Provisions and the corresponding Payment Priority Exchange are unenforceable pursuant to sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.

36.     There is an actual controversy between the parties on this issue because the Transaction Documents on their face require the Payment Priority Exchange in violation of the Bankruptcy Code, and Defendants have not indicated a willingness to disregard such Payment Priority Exchange.

37.     Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, Plaintiff requests that the Court enter a declaratory judgment that (a) the Modification Provisions are unenforceable *ipso facto* clauses pursuant to sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code, and (b) Plaintiff is entitled to Senior Payment Priority.

## COUNT II
## Against All Defendants

### (Declaratory Judgment – Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Violate the Automatic Stay)

38.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

39.     Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a petition under Title 11 of the Bankruptcy Code "operates as a stay, applicable to all entities, of – . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . ."  11 U.S.C. § 362(a)(3).

40.     At the time that Plaintiff commenced its case under the Bankruptcy Code, its right to Senior Payment Priority constituted a substantial asset of the estate.  Any action to exercise control over Plaintiff's Senior Payment Priority, including any action to effect the

12

Payment Priority Exchange, would be, therefore, subject to, and in violation of, the automatic

stay provided under section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(a)(3).

41.    Further, the Payment Priority Exchange improperly seeks to take property

of Plaintiff because of its or LBHI's bankruptcy filing.  Property of a debtor becomes property of

the estate, "notwithstanding any provision in an agreement . . . that is conditioned . . . on the

commencement of a case under this title . . . and that effects or gives an option to effect a

forfeiture, modification, or termination of the debtor's interest in property."  11 U.S.C.

§ 541(c)(1).  Effecting the Payment Priority Exchange would modify Plaintiff's Senior Payment

Priority, and thus cause Plaintiff to forfeit an interest in property, because of "the commencement

of a case under this title."  This violates the automatic stay provided under section 362(a).

42.    There is an actual controversy between the parties on this issue because

the Transaction Documents require the Payment Priority Exchange in violation of the

Bankruptcy Code, and Defendants have not indicated a willingness to disregard such Payment

Priority Exchange.

43.    Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001,

Plaintiff requests that this Court enter a declaratory judgment that enforcement of the Payment

Priority Exchange constitutes a willful violation of the automatic stay under section 362(a)(3) of

the Bankruptcy Code.

**ALTERNATIVE COUNT III**
**Against the Trustees**

(*Prepetition Payment Priority Exchange Constitutes
Avoidable Transfer Under Section 547 of the Bankruptcy Code*)

44.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 to 29 of this Complaint as though fully set forth in this cause of action.

45.     Section 547(b) of the Bankruptcy Code provides that "any transfer of an interest of the debtor in property" may be subject to avoidance as a preference if the transfer is made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) . . . while the debtor was insolvent; (4) . . . on or within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided for by the provisions of this title."  11 U.S.C. § 547(b).

46.     Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to Plaintiff under the Agreements – constituted an Event of Default under the Agreements with respect to Plaintiff.

47.     If the Payment Priority Exchange is found to be effective, it would cause Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its right to Senior Payment Priority.

48.     To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

49.     If the provisions that govern the Payment Priority Exchange are found to be enforceable, they would effect a transfer of Plaintiff's right to Senior Payment Priority to or

for the benefit of the Noteholders, who, pursuant to their contractual rights, would, under those narrow circumstances, have been creditors of Plaintiff.

50.     Under the circumstances described in this count, the transfer of Plaintiff's right to Senior Payment Priority would be on account of an antecedent debt, consisting of Plaintiff's contractual obligation, in specified circumstances, to transfer its right to Senior Payment Priority to or for the benefit of the Noteholders.

51.     Under these circumstances, any transfer would have been made no earlier than September 15, 2008 – within the 90 days preceding Plaintiff's bankruptcy filing – while Plaintiff was insolvent.

52.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would allow the Noteholders to receive more than they would have otherwise received if the case were a case under chapter 7 of this title and the transfer effected by the Payment Priority Exchange had not been made.

53.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it was a preferential transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 547(b) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.  In this alternative Count, Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

### ALTERNATIVE COUNT IV
### Against the Trustees

(*Prepetition Payment Priority Exchange
Constitutes Avoidable Transfer Under Section 548 of the Bankruptcy Code*)

54.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in preceding paragraphs 1 to 29 of this Complaint as though fully set forth in this cause of action.

55.     Section 548(a)(1)(B) of the Bankruptcy Code provides that a transfer of a debtor's interest in property, made within two years before the commencement of the debtor's bankruptcy case, may be avoided as constructively fraudulent if the debtor (a) "received less than reasonably equivalent value in exchange for such transfer" and (b) (i) "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer or obligation," (ii) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or (iii) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."  11 U.S.C. § 548(a)(1)(B)(i)-(ii).

56.     Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to Plaintiff under the Agreements – constituted an Event of Default under the Agreements with respect to Plaintiff.

57.     If the Payment Priority Exchange is found to be effective, it would cause Plaintiff to transfer to or for the benefit of the Noteholders an interest of Plaintiff in property – its right to Senior Payment Priority.

58.     To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* Plaintiff's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of Plaintiff, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

59.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would effect a transfer of Plaintiff's right to Senior Payment Priority to or for the benefit of the Noteholders.

60.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, and to the extent that the Payment Priority Exchange is not found to have been effected pursuant to, and in satisfaction of, an existing contractual obligation of Plaintiff, it would have been done gratuitously, and therefore, in exchange for less than reasonably equivalent value.

61.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange would have occurred when Plaintiff was, or thereby became, insolvent, or left with unreasonably small capital, or intending or believing that it would incur debts that would be beyond its ability to pay as such debts matured.

62.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange was a constructive fraudulent transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.  In this alternative Count, Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

## ALTERNATIVE COUNT V
### Against the Trustees

(*Postpetition Payment Priority Exchange
Constitutes Avoidable Transfer Under Section 549 of the Bankruptcy Code*)

63.      Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 to 29 of this Complaint as though fully set forth in this cause of action.

64.      Section 549(a) of the Bankruptcy Code provides that any transfer of property of a debtor's estate that occurs (a) "after commencement of the case," and (b) without authorization under the Bankruptcy Code or by the Court, may be avoided.  11 U.S.C. § 549(a).

65.      If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, to the extent that the Payment Priority Exchange was effected *after* the commencement of Plaintiff's bankruptcy case, it caused Plaintiff to transfer to or for the benefit of the Noteholders a property interest of Plaintiff's estate – its right to Senior Payment Priority.

66.      Any such transfer was not authorized under the Bankruptcy Code or by the Court.  In the alternative, any purported right to such transfer would have to be asserted as a claim through the normal claims procedures.

67.      If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, the Payment Priority Exchange was an unauthorized postpetition transfer of property of Plaintiff's estate – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 549 of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.  In this Count, Plaintiff asserts its right to avoid the Payment Priority Exchange and to recover and preserve Senior Payment Priority for the benefit of its estate.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following

relief:

A.      For declaratory judgment that the Payment Priority Exchange improperly

modified Plaintiff's Senior Payment Priority as a result of a bankruptcy

filing, and, as such, the Modification Provisions constitute unenforceable

*ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1) and

Plaintiff is entitled to Senior Payment Priority.

B.      For declaratory judgment that any action to enforce the Payment Priority

Exchange as a result of a bankruptcy filing violates the automatic stay

under 11 U.S.C. § 362(a).

C.      Alternatively, for a judgment that the Payment Priority Exchange was a

preferential transfer to or for the benefit of the Noteholders that is

avoidable pursuant to section 547 of the Bankruptcy Code, and pursuant to

sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to

recover and preserve Senior Payment Priority for the benefit of its estate;

D.      In the further alternative, for a judgment that the Payment Priority

Exchange was a constructive fraudulent transfer to or for the benefit of the

Noteholders that is avoidable pursuant to section 548 of the Bankruptcy

Code, and pursuant to sections 550 and 551 of the Bankruptcy Code,

Plaintiff is entitled to recover and preserve Senior Payment Priority for the

benefit of its estate;

E.      In the further alternative, for a judgment that the Payment Priority

Exchange was an unauthorized postpetition transfer to or for the benefit of

the Noteholders that is avoidable pursuant to section 549(a) of the

Bankruptcy Code, and pursuant to sections 550 and 551 of the Bankruptcy

Code, Plaintiff is entitled to recover and preserve Senior Payment Priority

for the benefit of its estate; and

F.      Any such other and further relief as the Court deems just and proper,

including costs and attorneys' fees.

Respectfully submitted,

By:  Ralph I. Miller_____
        Ralph I. Miller
        Peter Gruenberger
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Fascimile: (212) 310-8007
        Attorney for Debtors
        and Debtors in Possession

Dated:      New York, New York
            September 14, 2010

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x

In re:                                                      :

LEHMAN BROTHERS HOLDINGS INC., *et al.*    :

                              Debtors.                      :

———————————————————————x

LEHMAN BROTHERS SPECIAL FINANCING INC.    :

                              Plaintiff,                    :

-against-                                                  :

U.S. BANK NATIONAL ASSOCIATION, BANK OF
AMERICA NATIONAL ASSOCIATION, DEUTSCHE
BANK TRUST COMPANY AMERICAS, THE BANK OF
NEW YORK MELLON TRUST COMPANY NATIONAL
ASSOCIATION, WELLS FARGO BANK NATIONAL
ASSOCIATION, and DEFENDANTS IDENTIFIED ON
SCHEDULE 1,
                                                           :
                              Trustee Defendants,

-and-

AIRLIE CDO I, CORP., AIRLIE CDO I, LTD., AIRLIE
LCDO I (AVIV LCDO 2006-3), CORP, AIRLIE LCDO I
(AVIV LCDO 2006-3), LTD., AIRLIE LCDO II (PEBBLE
CREEK 2007-1), CORP., AIRLIE LCDO II (PEBBLE
CREEK 2007-1), LTD., AVIV LCDO 2006-1, CORP.,
AVIV LCDO 2006-1, LTD., AVIV LCDO 2006-2, CORP.,
AVIV LCDO 2006-2, LTD., BALBOA CDO I, CORP.,
BALBOA CDO I, LTD., BELLE HAVEN ABS CDO

Chapter 11

Case No. 08-13555 (JMP)

Adversary Proceeding
No.: _____ (JMP)

2005-1, LLC, BELLE HAVEN ABS CDO 2005-1, LTD.,
BELLE HAVEN ABS CDO 2006-1, LLC, BELLE
HAVEN ABS CDO 2006-1, LTD., EXUM RIDGE CBO
2006-1, CORP., EXUM RIDGE CBO 2006-1, LTD.,
EXUM RIDGE CBO 2006-2, CORP., EXUM RIDGE
CBO 2006-2, LTD., EXUM RIDGE CBO 2006-4, CORP.,
EXUM RIDGE CBO 2006-4, LTD., EXUM RIDGE CBO
2006-5, CORP., EXUM RIDGE CBO 2006-5, LTD.,
EXUM RIDGE CBO 2007-1, CORP., EXUM RIDGE
CBO 2007-1, LTD., EXUM RIDGE CBO 2007-2, CORP.,
EXUM RIDGE CBO 2007-2, LTD., GEMSTONE CDO VI
CORP., GEMSTONE CDO VI LTD., GREYSTONE CDO
SERIES 2008-4 LLC, GREYSTONE CDO SPC, FOR
THE ACCOUNT OF THE SERIES 2008-4
SEGREGATED PORTFOLIO, PEBBLE CREEK LCDO
2006-1, CORP., PEBBLE CREEK LCDO 2006-1, LTD.,
PEBBLE CREEK LCDO 2007-3, LLC, PEBBLE CREEK
LCDO 2007-3, LTD., RACE POINT IV CLO, LTD.,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2002-26 TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-
1-I TRUST, RESTRUCTURED ASSET CERTIFICATES
WITH ENHANCED RETURNS, SERIES 2006-18-C
ABX-A06-1-II TRUST, RESTRUCTURED ASSET
CERTIFICATES WITH ENHANCED RETURNS,
SERIES 2006-18-C ABX-A06-1-III TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-18-C ABX-A06-
2-I TRUST, RESTRUCTURED ASSET CERTIFICATES
WITH ENHANCED RETURNS, SERIES 2006-18-C
ABX-A06-2-II TRUST, RESTRUCTURED ASSET
CERTIFICATES WITH ENHANCED RETURNS,
SERIES 2006-18-C ABX-A06-2-III TRUST,
RESTRUCTURED ASSET CERTIFICATES WITH
ENHANCED RETURNS, SERIES 2006-20AT TRUST,
SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3),
LTD., STOWE CDO LLC, STOWE CDO SPC, FOR THE
ACCOUNT OF THE SERIES 2008-1 SEGREGATED
PORTFOLIO, TRADEWINDS II CDO SERIES 2006-1
LLC, TRADEWINDS II CDO SPC, FOR THE
ACCOUNT OF THE SERIES 2006-1 SEGREGATED
PORTFOLIO, WHITE MARLIN CDO 2007-1, CORP.,
WHITE MARLIN CDO 2007-1, LTD.,

Issuer Defendants.

_____x

## SCHEDULE 1

**Plaintiff's Original Complaint**

| Name | Principal Business Address |
|------|----------------------------|
| Airlie CDO I, Corp. | 850 Library Avenue, Suite 204, Newark, DE 19711 |
| Airlie CDO I, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Airlie LCDO I (Aviv LCDO 2006-3), Corp. | 850 Library Avenue, Suite 204, Newark, DE 19711 |
| Airlie LCDO I (Aviv LCDO 2006-3), Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Airlie LCDO II (Pebble Creek 2007-1), Corp. | 850 Library Avenue, Suite 204, Newark, DE 19711 |
| Airlie LCDO II (Pebble Creek 2007-1), Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Aviv LCDO 2006-1, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Aviv LCDO 2006-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Aviv LCDO 2006-2, Corp. | 850 Library Avenue, Suite 204, Newark, DE 19711 |

| | |
|---|---|
| Aviv LCDO 2006-2, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Balboa CDO I, Corp. | c/o The Corporation Trust Company, Attn: President, Re: Balboa CDO I, Ltd., Corporate Trust Center, 1209 Orange Street, Wilmington, DE 19801 |
| Balboa CDO I, Ltd. | c/o QSPV Ltd., Attn: The Directors, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands, British West Indies |
| Belle Haven ABS CDO 2005-1, LLC | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Belle Haven ABS CDO 2005-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Belle Haven ABS CDO 2006-1, LLC | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Belle Haven ABS CDO 2006-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2006-1, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Exum Ridge CBO 2006-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2006-2, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |

| | |
|---|---|
| Exum Ridge CBO 2006-2, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2006-4, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Exum Ridge CBO 2006-4, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2006-5, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Exum Ridge CBO 2006-5, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2007-1, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Exum Ridge CBO 2007-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Exum Ridge CBO 2007-2, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Exum Ridge CBO 2007-2, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Gemstone CDO VI Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |

| | |
|---|---|
| Gemstone CDO VI Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Greystone CDO Series 2008-4 LLC | 850 Library Avenue, Suite 204, Newark, DE 19711 |
| Greystone CDO SPC, for the account of the Series 2008-4 Segregated Portfolio | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Pebble Creek LCDO 2006-1, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Pebble Creek LCDO 2006-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Pebble Creek LCDO 2007-3, LLC | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Pebble Creek LCDO 2007-3, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Race Point IV CLO, Ltd. | c/o Walkers SPV Limited, Walker House, Mary Street, P.O. Box 908 GT, George Town, Grand Cayman, Cayman Islands |
| Restructured Asset Certificates With Enhanced Returns, Series 2002-26 Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005; and/or The Bank of New York Mellon Trust Company, National Association, 601 Travis Street, 16th Floor, Houston, Texas 77002 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-1-I Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |

| | |
|---|---|
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-1-II Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-1-III Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-2-I Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-2-II Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-18-C ABX-A06-2-III Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| Restructured Asset Certificates With Enhanced Returns, Series 2006-20AT Trust | c/o U.S. Bank National Association, 100 Wall St., 16th Floor, New York, NY 10005 |
| SGS HY Credit Fund I (EXUM Ridge CBO 2006-3), Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Stowe CDO LLC | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Stowe CDO SPC, for the account of the Series 2008-1 Segregated Portfolio | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |
| Tradewinds II CDO Series 2006-1 LLC | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
| Tradewinds II CDO SPC, for the account of the Series 2006-1 Segregated Portfolio | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |

| White Marlin CDO 2007-1, Corp. | 850 Library Avenue, Suite 204, Newark, Delaware 19711 |
|---|---|
| White Marlin CDO 2007-1, Ltd. | c/o Maples Finance Limited, P.O. Box 1093 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands; With a copy to: Maples and Calder, P.O. Box 309GT, Ugland House, South Church Street, George Town, Grand Cayman, Cayman Islands |